UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HATTIE TANNER, #325966

    Plaintiff,

CASE NO. 5:07-cv-14579

v.

HON. JOHN CORBETT O'MEARA

MAGISTRATE JUDGE PAUL J. KOMIVES

WATSON, *et al.,*

    Defendants.
_____/

# REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I.    RECOMMENDATION: Defendants' motion for summary judgment should be denied.

II.    REPORT:

A.    *Introduction*

1.    This case was referred to me for pretrial case management pursuant to 28 U.S.C. 636(b)(1). Doc. Ent. 8.

2.    Plaintiff is an inmate in the custody of the Michigan Department of Corrections ("MDOC"), and at all times pertinent to the allegations in the complaint was incarcerated at the Robert Scott Correctional Facility ("SCF") in Plymouth, Michigan.

3.    On October 26, 2007, plaintiff filed this *pro se* civil rights action under 42 U.S.C. § 1983 claiming that defendants Watson, Borthwell, Moses, Andrews, Stringer-Hill, and Chalk violated her rights under the U.S. Constitution by impeding her access to the courts. Plaintiff seeks monetary and other relief.

4. Currently before the Court is a motion for summary judgment filed by defendants Watson, Borthwell, Moses, and Stringer-Hill[1] on January 7, 2008. Doc. Ent. 13. Defendants move for summary judgment on the ground that Plaintiff has not properly exhausted her administrative remedies under the Prisoner Litigation Reform Act of 2004. 42 USC § 1997(a). Specifically, defendants argue that (a) plaintiff did not properly exhaust because her three grievances were all untimely per MDOC policy, and (b) plaintiff did not properly exhaust because defendants were not named per MDOC policy. Defendants further argue that because plaintiff put the wrong dates on a grievance form she submitted, the third grievance was not identified as untimely.

5. Plaintiff filed a response in opposition on March 17, 2008. Doc. Ent. 17. Plaintiff argues that the Court should deny summary judgment on the basis of exhaustion because defendants caused plaintiff's administrative appeals to be late or otherwise defective. Specifically, she alleges that defendants denied her assistance by prison staff and a prisoner paralegal in violation of MDOC policy.

B.  *Summary Judgment*

Motions for summary judgment are governed by Rule 56(c) of the Federal Rules of Civil Procedure. Judgment will be granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989) (citing

---

[1] Defendants Andrews and Chalk have not been served. Doc. Ent. 14, 15, 18.

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). In determining whether the moving party has met its burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In responding to a motion for summary judgment, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 191 L.Ed.2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir.1993). When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court may rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404 (6th Cir.1992). However, a court should hold the allegations in a *pro se* complaint or response to less stringent standards than formal pleadings drafted by lawyers. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).

After examining the evidence designated by the parties, the court then determines " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir.1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

C.      *Factual Background*

This section is compiled from the facts set out in the complaint, as well as from the MDOC documents attached to the complaint (Doc. Ent. 1), defendant's motion for summary judgment (Doc. Ent. 13), and plaintiff's response (Doc. Ent. 17). This section does not constitute factual findings; the facts are merely presented in the light most favorable to the plaintiff. *See* Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 587-88.

On November 7, 2005, a judgment against plaintiff in her habeas corpus petition was entered in this Court. *Tanner v. Yukins*, No. 04-CV-71155-DT, 2005 WL 2994353 (E.D.Mich. 2005) (Roberts, J). Pursuant to Rule 4(a) of the Federal Rules of Appellate Procedure, plaintiff had 30 days to file a notice of appeal, or until December 8, 2005. *See* Fed. R. App. P. 4(a), 4(c), and 26(a). Plaintiff maintains that she is innocent, and that she wanted to appeal the District Court's decision. Her notice of appeal, placed in prison mail on December 9, 2005, and filed in the District Court on December 13, 2005, was late.[2] Because compliance with Fed. R. App. P. 4(a) is a mandatory prerequisite, *Baker v. Raulie*, 879 F.2d 1396, 1398 (6th Cir. 1989) (per curiam), the Sixth Circuit ordered that plaintiff's appeal be dismissed. *Tanner v. Yukins*, No. 06-1029 (6th Cir. Mar. 13, 2006) (order dismissing appeal).

On December 3, 2005, five days before this notice of appeal was due to be filed, a unit officer for plaintiff's residential unit lost her keys. *See* Compl. at 3. As a result, the residential unit "Auburn A" was effectively placed on "lock-down" status until December 9, 2005, during which time plaintiff was told by at least two defendants that she would not be allowed to leave her cell or receive mail. *See id.*

---

[2]*Pro se* prisoners' notices of appeal are considered "filed" under Rule 4(a)(1) at the moment of delivery to prison authorities for forwarding to the district court. *See Houston v. Lack*, 487 U.S. 266, 266 (1988).

On December 6, 2005, a prisoner paralegal finished preparing a notice of appeal on behalf of plaintiff, and sent the legal work to plaintiff by inter-institutional mail. *See id*. Plaintiff, as well as the prisoner paralegal, knew about and planned to comply with the December 8, 2005, deadline for filing the notice of appeal. For that reason plaintiff had scheduled a "call-out" on December 6, 2005, to the prison law library, which would allow her to review and sign the legal work that had been prepared on her behalf. However, because the cell block was on "lock-down" status, plaintiff was not allowed to leave her cell or receive the mail. *See id.*

On December 6, 2005, Plaintiff repeatedly asked to receive her mail. Defendant Borthwell told her "too bad." Defendant Moses told plaintiff that she would "not allow any prisoner movement." When plaintiff asked to speak to shift command, defendants Borthwell and Moses refused. Meanwhile, other prisoners were allowed to leave their cells for medical reasons. *See id.*

Plaintiff received the draft notice of appeal only late in the evening on December 8, 2005. She mailed the documents the following day. Plaintiff sought a verification from MDOC personnel that her cell block was on "lock-down" on the days leading up to the deadline for her appeal, which she believed would assist with her appeal. *See id.* This document was not provided to plaintiff until April 25, 2007. *See* Doc. Ent. 13-4 (Ex. B to Def.'s Mot. Summ. J.) at 2.

Following the incident, defendants and other prison staff prevented plaintiff from seeking relief through the MDOC grievance process. *See* Compl. at 3. In violation of MDOC policy, plaintiff was not given or even allowed assistance with filing her grievances until July 17, 2006. *See* Compl. at 9; MDOC PD 03.02.130(M)("Wardens and FOA Area Managers shall ensure prisoners and parolees are provided with assistance in completing a grievance form, if needed. In such cases, assistance shall be provided by a staff member who is not involved in the grievance.") Plaintiff

5

confirms that she is functionally illiterate, and could not pursue a grievance on her own. *See*, e.g., Compl. at 3.

With help from other prisoners or with assistance from defendants, plaintiff pursued three separate grievances against MDOC personnel beginning in July 2006. The first of these, designated SCF-2006-07-2397-28e ("Grievance 1"), was filed the day after plaintiff received the assistance she required, or July 18, 2006. In December 2006, plaintiff filed two additional grievances that essentially duplicated the first grievance. On December 4, 2006, plaintiff filed SCF-2006-12-4067-28e ("Grievance 2"). On December 13, 2006, plaintiff filed SCF-2006-12-4213-03f ("Grievance 3").

1. *Grievance 1*

Step I of Grievance 1 was filed on July 18, 2006, or immediately after plaintiff began receiving assistance with filing her grievances. On the grievance form, plaintiff wrote,

> I am grieving MDOC (RSCF) [Robert Scott Correctional Facility] because of untimely mailing of my legal matters (paper) and causing me a denial and dismissal of my appeal. At the time I was (am) housed in Auburn A housing unit. And the unit was on lock-down status. During the time that I was on this emergency lock-down I was on the call out to pick up my legal mail, but I was not allowed to go pick up my mail even after I explained that I had a deadline to meet. Therefore I hold Michigan Department of Corrections at Robert Scott's (sic) Corr. Fac. responsible for my dismissal.

Compl. at 8. That same day, the grievance was rejected as untimely. *See* Compl. at 8.

Plaintiff did not name any of the defendants on this form. MDOC policy requires that prisoners list the names of all those involved in their grievances. MDOC PD 03.02.130(T). Plaintiff argues that where she failed to name defendants, it was the result of defendants' advice or interference. *See* Compl. at 3. Step II of Grievance 1 was filed on August 4, 2006, shortly after plaintiff received the Step I response. Plaintiff wrote on the Step II form,

> This issue is not resolved. I am functionally illiterate and needed assisted

> (sic) to understand the grievance procedure, it was not until 7/17/06 that I received assistance concerning my issue of the housin (sic) unit being locked down 12/3/05 to the afternoon of 12/8/05. I could not go to the law library to pick up my legal work that was due to the 6th Cir. Court 12/8/05. The legal work was sent to me via interdepartment mail on 12/6/05 but I did not receive the mail until after 4 p.m. this was too late to put inot (sic) the hands of my counselor to satisfy the federal mail box rule, therefore, my filing was untimely in the court, and as a result it was dismissed.
>
> This dismissal of my criminal appeal is a direct result of the lock-down of my housing unit, which prevented my timely access to the courts. Warden Stovall, Rum [Residential Unit Manager] Moses, and mail room staff are the persons this grievance is against. I did not receive my legal papers from the legal writer until 12/8/05, after 4 p.m., this was TWO(2) days after it was sent to me ID mail! This delay was unreasonable and prevented me from timely filing of my criminal appeal.

Compl. at 9. The Step II response was dated March 19, 2007. *See id.* The text of the Step II response, which was apparently attached to the form, was not provided to the Court by either of the parties. This response, however, which is dated more than six months after the Step II appeal was filed, appears to violate MDOC policy. *See* MDOC PD 03.02.130(EE) (requiring a response within 15 business days); MDOC PD 03.02.130(U) (limiting the entire three-step grievance process to 90 calendar days).

Plaintiff notes in her Step III appeal that she still had not received the verification she requested that her unit was on lock-down. *See* Compl. at 9. The Step III appeal names defendants Moses and Stringer-Hill. Plaintiff wrote, "I have sent several kites and attempted to approach them to be told not now." *Id.* The Step III response was dated July 30, 2007, or more than 18 months after Step I was filed. *See* Compl.at 10. The Step III response noted that a notarized memorandum confirming the dates of the lock-down had been provided to plaintiff, and indicated that the matter was resolved. *See id.* This response also appears to violate MDOC policy. *See* MDOC PD 03.02.130(U) (limiting the entire three-step grievance process to 90 calendar days).

While plaintiff does not name any of the defendants in Step I of Grievance 1, plaintiff

identifies defendant Moses in Step II, and identifies Moses and Stringer-Hill in Step III.

2. *Grievance 2*

Step I of Grievance 2 was filed on December 4, 2006. Plaintiff names defendants Borthwell, Moses, and Andrews on this form. *See* Compl. at 13. Plaintiff argues that the untimeliness of the grievance should be excused on the grounds that she was only just advised by the law librarian that she had a grievable issue. *See id*. Plaintiff recites the same facts as in Grievance 1. *See id*. Plaintiff received a Step I response the same day, which indicated that the grievance was untimely. *See id*. At the time plaintiff filed Grievance 2, she had waited more than four months for a response to her Step II appeal in Grievance 1, while the deadline for a response is 15 business days. *See* MDOC PD 03.02.130(EE).

On Step II of Grievance 2, filed December 17, 2006, plaintiff notes that she had still not received the verification she had requested. *See* Compl. at 14. The Step II response, apparently received by plaintiff on December 28, 2006, was not provided to the Court. *See id*.

On Step III of Grievance 2, plaintiff notes that she still had not received the verification she had requested, which she believed would assist with her appeal. She indicates that she has "sent kites requesting this over and over again," and that she believed she was being given "the run around." *See id*. The Step III response, dated February 14, 2007, recommends that plaintiff receive the verification she requested, and otherwise supports the rejection of the grievance appeal as being untimely. *See id. at 15*.

3. *Grievance 3*

Plaintiff filed Grievance 3 on December 12, 2006, or more than one year after the incident. *See id.* at 17. Plaintiff indicates that in Grievance 3 she is grieving the law librarian for "failing to

8

process my appeal." *See id.*

Defendants claim that this grievance was not rejected as "untimely" in the same way as the first two because plaintiff incorrectly listed the "Date of the Incident" as "12-08-06" instead of "12-08-05." Plaintiff insists that this is a mistake, and urges that defendants had also incorrectly listed the date of the incident on other documents. The "Date of the Incident" appears to have been subsequently corrected on the form. *See* Compl. at 17. In any event, the Step I response, dated January 11, 2007 (or 20 business days after the grievance was filed), recites the true dates of the incident as "05" and not "06," and does not address the incorrect date on the Step I form. *See id.* The Step I response indicated that there was no way to verify when plaintiff received the notice of appeal from the prisoner paralegal. *See id.*

Plaintiff filed Step II on January 24, 2007, reciting the same complaint. Doc. Ent. 13-4 (Ex. B to Def.'s Mot. Summ. J.) at 3-4. The Step II response was dated May 2, 2007, and indicated that an administrative assistant had generated the requested notarized memorandum. *See id.* at 5.

Plaintiff appealed to Step III, complaining that the notarized memorandum took well over a year to be produced, and that this had resulted in an unreasonable delay of her access to the courts. The Step III response was not received until July 30, 2007. *See id.* at 6. At Step III, the investigator acknowledges that the document plaintiff requested was not provided in a timely fashion, but indicates that beyond the document provided to plaintiff no relief is available. *See id.*

D.  *Exhaustion*

The Supreme Court has held that Prison Litigation Reform Act (PLRA) requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 2387 (2006). Exhaustion is "proper" when it complies with "critical procedural rules" such as time limits for filing grievances. *Id.* Proper

exhaustion is a precondition to any suit challenging prison conditions; failure to properly exhaust bars suit in federal court. *Id.*

Supreme Court has indicated, however, that the PLRA does not "[1] require a prisoner to allege and demonstrate exhaustion in his complaint, [2] permit suit only against defendants who were identified by the prisoner in his grievance, [or] [3] require courts to dismiss the entire action if the prisoner fails to satisfy the exhaustion requirement as to any single claim in his complaint." *Jones v. Bock*, 127 S.Ct. 910, 921 (2007).

The prison's requirements determine when exhaustion is proper. *Id.* at 921-923. The operative requirements during the period embracing the events set out in the complaint are set out in MDOC Policy Directive 03.02.130, effective December 19, 2003. This Policy directive requires that in order to properly exhaust, prisoners must list the names of all those involved in their grievances. MDOC PD 03.02.130(T) ("Dates, times, places and names of all those involved in the issue being grieved are to be included").

The Supreme Court in *Jones* held that "failure to exhaust is an affirmative defense under the PLRA," and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 127 S.Ct. at 912.

E. *Discussion*

Defendants' burden in the motion before the Court is two-fold. First, pursuant to the PLRA as interpreted by the Supreme Court, defendants have the burden of showing affirmatively that plaintiff has failed to properly exhaust. *See Jones*, 127 S.Ct. at 912. Second, in order to be successful on a motion for summary judgment, defendants must persuade the Court that no genuine issue of material fact exists as to whether plaintiff has properly exhausted, i.e., that plaintiff has failed to

10

exhaust as a matter of law. *See* Fed. R. Civ. P. 56(c). I conclude that defendants' motion should be denied to the extent it argues that no genuine issue of material fact exists as to whether plaintiff has failed to exhaust her administrative remedies against defendants.

Lack of assistance is a valid excuse from the exhaustion requirement, as suggested by several post-*Woodward* cases. As this Court has noted, "[a]ssistance in submitting a grievance is a logical and essential step to obtaining access to the courts." *Nelson v. Gowdy*, No. 03-10116-BC, 2006 WL 2604679 at *2 (E.D.Mich. 2006) (Lawson, J*)*. The Third Circuit has suggested that the failure of the prison to provide assistance is a valid excuse for improper exhaustion where the plaintiff specifically asked for and was refused assistance. *See Ramos v. Smith*, 187 Fed.Appx. 152, 154 (3rd Cir. 2006) (affirming dismissal of plaintiff's case where plaintiff "does not claim that he asked for and was refused assistance in filing his administrative appeals"). The Fifth Circuit has similarly indicated that to be excused from the exhaustion requirement, a plaintiff requiring assistance must file a grievance once the plaintiff finds prison staff or an inmate willing to help. *See Fontenot v. Global Expertise in Outsourcing*, 232 Fed.Appx. 393, 394 (5th Cir. 2007) (holding that plaintiff "is not excused from the exhaustion requirement because he did not file a grievance once he found an inmate willing to help him"). Furthermore, this Court suggested in *Nelson* that when determining whether plaintiff should be excused from the exhaustion requirement requires a factual inquiry, summary judgment is inappropriate. *Nelson*, 2006 WL 2604679 at *3 ("Whether 'reasonable' alternatives exist requires a factual inquiry, not appropriately resolved on a motion for summary judgment. Although staff may have been able to help plaintiff . . . with his grievances, the plaintiffs present evidence that, when viewed in the light most favorable to them, suggests prison officials attempted to obstruct access to judicial review"). These three cases strongly suggest that a plaintiff

is excused from the exhaustion requirement where the prison staff denied the plaintiff assistance when plaintiff requested it, when no reasonable alternative means existed for the plaintiff to pursue a timely grievance, and when defendants or third parties frustrated or interfered with plaintiff's efforts to pursue a grievance.

Plaintiff urges that she should be excused from the exhaustion requirement because she asked for and was denied assistance from the period following the incident until July 17, 2006. *See* Compl. at 8. Plaintiff confirms that she is illiterate and could not complete a grievance form on her own, and alleges that where her grievances are defective, these defects are the result of defendants' advice or interference. *See, e.g., id.* at 3. Plaintiff further alleges that she filed a grievance immediately upon receiving help. *See id*. at 8. Whether or not prison staff did in fact deny plaintiff assistance when she requested it, whether in fact any alternative means existed for plaintiff to pursue a timely grievance, and whether as plaintiff alleges defendants in fact frustrated or interfered with plaintiff's efforts to pursue a grievance all require a factual inquiry. Factual inquiries such as these are not appropriately resolved on a motion for summary judgment, since the Court must on a motion for summary judgment accept the facts in the light most favorable to the plaintiff. *See Nelson*, 2006 WL 2604679 at *3; Fed. R. Civ. P. 56(c).

The Court should not address on this motion the issue raised by defendants – whether plaintiff has properly exhausted because she failed to name all defendants in her grievances – because there are genuine issues of material fact as to the threshold question of whether defendants or others in fact frustrated or interfered with plaintiff's efforts to pursue the grievances.

Summary judgment is only appropriate where there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). This Court should conclude that with regard to the issue of exhaustion there are

genuine issues of material fact as to whether plaintiff was denied assistance when she requested it, whether any alternative means existed for plaintiff to pursue a timely grievance, and whether defendants in fact frustrated or interfered with plaintiff's efforts to pursue a grievance. Each of these facts is essential to a determination of whether plaintiff has properly exhausted pursuant to the PLRA. These issues should be the subject of further factual development by the parties. Accordingly, defendants' motion for summary judgment should be denied.

F.    *Conclusion*

In view of the foregoing, the Court should conclude that defendants have not satisfied their burden under Rule 56(c) and the PLRA as interpreted by the Supreme Court. Accordingly, the Court should deny Defendant's motion for summary judgment.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives  
PAUL J. KOMIVES  
UNITED STATES MAGISTRATE JUDGE

Dated: 7/17/08

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on July 17, 2008.
>
> s/Eddrey Butts  
> Case Manager