UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HATTIE TANNER, # 325966

   Plaintiff,

          CASE NO. 5:07-cv-14579

  v.        HON. JOHN CORBETT O'MEARA

          MAGISTRATE JUDGE PAUL J. KOMIVES

KATRINA BORTHWELL
and VERNITA MOSES,

   Defendants.
_____/

## REPORT AND RECOMMENDATION ON DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT

*Table of Contents*

I. RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II. REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
 A. *Introduction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
 B. *Summary Judgment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
 C. *Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
 D. *Discussion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
  1. *The facts, viewed in the light most favorable to Plaintiff, show Defendants violated*
   *Plaintiff's constitutional right of access to the courts.* . . . . . . . . . . . . . . . . . . . . . 9
   a. *The amended complaint sufficiently alleges the personal involvement of*
    *Defendants.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
   b. *Genuine issues of material fact exist as to whether injury to Plaintiff was the*
    *result of prison regulations reasonably related to a legitimate penological*
    *interest.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
   c. *Genuine issues of material facts exist as to whether Defendants' actions were*
    *the result of isolated negligence.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
   d. *Genuine issues of material fact exist as to whether Defendants caused Plaintiff's*
    *injury.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
  2. *Defendants are not protected from this action by the Eleventh Amendment or qualified*
   *immunity.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
   a. *Defendants are not entitled to Eleventh Amendment immunity because the*
    *Plaintiff sues Defendants in their individual capacities.* . . . . . . . . . . . . . . . 18
   b. *Defendants are not entitled to qualified immunity because Plaintiff's*
    *constitutional right of access to the courts was clearly established under the*
    *circumstances.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
 E. *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
III. NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

I.      <u>RECOMMENDATION</u>: Defendant's second motion for summary judgment, Doc. Ent.

25, should be denied.

II.     <u>REPORT</u>:

A.      *Introduction*

This case was referred to me for pretrial case management pursuant to 28 U.S.C. §

626(b)(1). Doc. Ent. 8.

Plaintiff is an inmate in the custody of the Michigan Department of Corrections

("MDOC"), and at all times pertinent to the allegations in the complaint was incarcerated at the

Robert Scott Correctional Facility ("SCF") in Plymouth, Michigan.

On October 26, 2007, plaintiff filed this civil rights action under 42 U.S.C. § 1983

claiming that SCF staff defendants Watson, Andrews, Chalk, Stringer-Hill, Borthwell, and

Moses violated her rights under the U.S. Constitution by impeding her access to the courts. Doc.

Ent. 1 (hereafter "Compl.").

Defendants filed a motion for summary judgment on January 7, 2008, arguing lack of

exhaustion under the Prison Litigation Reform Act of 2004. Doc. Ent. 13 (hereafter "Def.'s First

Mot. Summ. J.").[1] This Court denied Defendants' first motion for summary judgment on August

6, 2008. Doc. Ent. 21.

On September 11, 2008, Plaintiff filed a motion for appointment of counsel. Doc. Ent. 22.

This Court conditionally granted the motion on October 1, 2008. Doc. Ent. 23. Attorneys

Allyson A. Miller (December 9, 2008), Michael D. Bossenbroek (December 22, 2008), and

---

[1]I call this motion for summary judgment the "first" to distinguish it from the motion for
summary judgment now before the Court, which I call the "second."

Christina E. Pina (February 13, 2009) filed Notices of Appearance on behalf of Plaintiff. Doc. Ent. 27, 30, 38.

On January 21, 2009, the parties stipulated to the dismissal of Plaintiff's claims against Defendants Watson, Andrews, Chalk, and Stringer-Hill. Doc. Ent. 31. This Court ordered the claims dismissed against these four defendants on January 22, 2009. Doc. Ent. 33.

On January 23, 2009, this Court gave Plaintiff permission to amend her complaint for the purposes of omitting claims pertaining to dismissed parties and clarifying the factual allegations in the initial complaint. Doc. Ent. 34. On January 28, 2009, Plaintiff filed an amended complaint. Doc. Ent. 35 (hereafter "Am. Compl.").

Defendants filed an answer to the complaint on February 11, 2009. Doc. Ent. 37.

Currently before the Court is a motion for summary judgment filed on November 10, 2008. Doc. Ent. 25 (hereafter "Def.'s Second Mot. Summ. J."). First, Defendants argue that the facts, viewed in the light most favorable to Plaintiff, do not show that Defendants' conduct violated Plaintiff's constitutional right of access to the courts. In particular, Defendants argue that

> (a)     the complaint does not sufficiently allege the personal involvement of Defendants,
>
> (b)     injury to Plaintiff that was the product of prison regulations reasonably related to legitimate penological interests does not violate Plaintiff's constitutional right of access to the courts,
>
> (c)     Defendants' isolated negligence does not violate Plaintiff's constitutional right of access to the courts, and

3

      (d)     Defendants' actions did not cause Plaintiff's injury because she waited until the last minute to file her Notice of Appeal.

Second, Defendants argue that even if the facts, considered in the light most favorable to Plaintiff, show that Defendants violated Plaintiff's constitutional right of access to the courts, Defendants are nonetheless entitled to summary judgment because

      (a)     Defendants are protected from 42 U.S.C. § 1983 actions brought against them in their official capacities by the Eleventh Amendment, and

      (b)     Defendants are entitled to qualified immunity because Defendants violated a constitutional right that was not clearly established.

Plaintiff filed a response on February 9, 2009. Doc. Ent. 36 (hereafter "Pl.'s Resp. Def's Second Mot. Summ. J.")

B.    *Summary Judgment*

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. The party against whom relief is sought may move for summary judgment at any time. Fed. R. Civ. P. 56(b). Summary judgment will be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A court considering a motion for summary judgment views all facts and inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The burden is initially on the moving party to show the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). A court may consider the plausibility of the

moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

Responding to a motion under Rule 56(c), the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Companies, Inc.*, 8 F.3d 335, 339-40. (6th Cir. 1993). When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street* 886 F.2d at 1479-80. Instead, the court may rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404 (6th Cir. 1992).

After examining the evidence designated by the parties, the court determines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

C.    *Factual Background*

This section is compiled from the facts alleged in the amended complaint (Am. Compl. ¶¶ 6-44), Defendant's second motion for summary judgment (Doc. Ent. 25), Plaintiff's response (Doc. Ent. 36), and the exhibits to both motions.  This section does not constitute factual findings; the facts are merely presented in the light most favorable to the Plaintiff. *See* Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 587-88.

On November 8, 2005, in *Tanner v. Yukins*, Case No. 04-CV-71155, this Court entered judgment denying Plaintiff's petition for a writ of habeas corpus. Pursuant to Fed. R. App. P. 4(a)(1)(A), Plaintiff had until December 8, 2005, to file her Notice of Appeal with this Court. Am. Compl. ¶¶ 6-7.

Because Plaintiff is functionally illiterate, Plaintiff requested that a prison legal writer assist her in preparing a Notice of Appeal and Motion for Leave to Proceed on Appeal *in forma pauperis*. On or about November 15, 2005, Plaintiff met with the legal writer to discuss her case. On or about November 17, 2005, with the assistance of the legal writer, Plaintiff requested that SCF release a Certificate of Account Activity to append to her Motion for Leave to Proceed on Appeal *in forma pauperis* as required by Fed. R. App. P. 24(a)(5). *See* Pl.'s Resp. Def's Second Mot. Summ. J., Ex. A (November 17, 2005, Release Authorization from Plaintiff to SCF).  SCF, however, returned a Certificate for the incorrect time period. *See* Pl.'s Resp. Def's Second Mot. Summ. J., Ex. B (Twelve-Month Certificate of Plaintiff's Account Activity). Plaintiff made a second request for a Certificate of Account Activity, and the correct certificate was delivered to the legal writer only three days before the filing deadline, December 6, 2005. *See* Pl.'s Resp. Def's Second Mot. Summ. J., Ex. C (Six-Month Certificate of Plaintiff's Account Activity). The legal writer scheduled a "call-out" for Plaintiff to visit the law library on December 6, 2005, to sign her prepared Notice of Appeal and Motion for Leave to Proceed on Appeal *in forma pauperis*. Am. Compl. ¶¶ 8-13.

Plaintiff's housing unit, Auburn A, was on "lock-down" status from December 3, 2005 to December 8, 2005. Am. Compl. ¶ 14.  The Warden authorized the lock-down. Def.'s Second Mot. Summ. J., Ex. D ¶ 5. It remains unclear what was the purpose of the six-day lock-down; a resident unit officer's keys may have been misplaced. *See* Compl. at 3.

Defendant Borthwell refused Plaintiff's repeated requests to allow her to attend her "call-out" to the law library on December 6, 2005. When Plaintiff explained that she needed to go to the law library to sign her Notice of Appeal because of her filing deadline, Defendant Borthwell replied, "too bad." Defendant Moses also refused to allow Plaintiff to attend her "call-out" to the law library, stating that she could not allow any prisoner movement in Plaintiff's residential unit. Am. Compl. ¶ 15-17.

Several other inmates in Plaintiff's residential unit were permitted to attend scheduled medical "call-outs" or leave the residential unit for other reasons during the lock-down. Am. Compl. ¶ 18; *see also* Pl.'s Resp. Def's Second Mot. Summ. J., Ex. D (Plaintiff deposing that "several inmates were permitted to leave the residential unit for scheduled medical visits or other unknown reasons"). Plaintiff requested to speak to shift command about her urgent need to attend her "call-out" to the law library, but Defendant Borthwell refused Plaintiff's request.  Am. Compl. ¶ 19.

Because  Plaintiff could not attend her "call-out" to the law library, the legal writer sent plaintiff the prepared Notice of Appeal and Motion for Leave to Proceed on Appeal *in forma pauperis* via inter-institutional mail on December 6, 2005 for Plaintiff to sign and file. Plaintiff repeatedly requested that Defendants deliver her legal mail. Plaintiff, however, did not receive her Notice of Appeal and Motion for Leave to Proceed on Appeal *in forma pauperis* until December 8, 2005 after the 4:00 p.m. count, when there was no prison staff member available to mail the documents on her behalf to meet the December 8, 2005 deadline. Am. Compl.¶¶ 20-22.

Plaintiff signed her filings and placed them in the hands of Defendant Moses for mailing as soon as possible at 10:45 a.m. the morning of December 9, 2005. An expedited legal mail receipt was filed for Plaintiff that day and her Notice of Appeal was received and filed by this

Court on December 13, 2005.[2] On December 23, 2005, this Court granted Plaintiff a Certificate of Appealability on two of her habeas claims. Am. Compl. ¶¶ 23-25. Plaintiff made filings in both this Court and the Sixth Circuit explaining that her untimely filing was due to the lock-down of her residential unit from December 3, 2005 to December 8, 2005, and Defendants' refusal to permit her to attend her law library "call-out" on December 6, 2005 or deliver her legal mail so that she could sign and file the Notice of Appeal prepared for her by the prison legal writer. Am. Compl. ¶ 27. However, because compliance with Fed. R. App. P. 4(a) is mandatory, *Baker v. Raulie*, 879 F.2d 1396, 1398 (6th Cir. 1989) (per curiam), the Sixth Circuit ordered that Plaintiff's appeal be dismissed. *See Tanner v. Yukins*, No. 06-1029 (6th Cir. Sept. 11, 2006) (order dismissing appeal); Am. Compl. ¶ 26.

D.     *Discussion*

    1.     *The facts, viewed in the light most favorable to Plaintiff, show Defendants violated Plaintiff's constitutional right of access to the courts.*

Defendants argue that they are entitled to summary judgment because there are no genuine issues of material fact as to whether Defendants' conduct violated Plaintiff's constitutional right of access to the courts. In particular, Defendants argue that (a) the complaint does not sufficiently allege the personal involvement of Defendants, (b) injury to plaintiff that was the product of prison regulations reasonably related to legitimate penological interests does not violate Plaintiff's constitutional right of access to the courts, (c) Defendants' isolated negligence does not violate Plaintiff's constitutional right of access to the courts; and (d)

---

[2] Because a *pro se* prisoner's Notice of Appeal is considered "filed" under Fed. R. App. P. 4(a)(1) at the moment of delivery to prison authorities for forwarding to the district court, *Houston v. Lack*, 487 U.S. 266, 266 (1988), Plaintiff's Notice of Appeal is considered filed as of December 9 and not December 13. Regardless, both dates are past the December 8 deadline.

Defendants' actions did not cause Plaintiff's injury because she waited until the last minute to file her Notice of Appeal.

Notwithstanding their incarceration, prison inmates retain a right of access to the courts under the Constitution as interpreted by the Supreme Court. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977). "The right springs from the Due Process Clauses of the Fifth and Fourteenth Amendments and the right to petition found in the First Amendment." *Hodge v. Prince*, 730 F.Supp. 747, 751 (N.D. Tex 1990), as well as from the Privileges and Immunities Clause of Article IV. *See Chambers v. Baltimore and O.R. Co.*, 207 U.S. 142, 148 (1907). Inmates have a constitutional right to attack their sentences, directly or indirectly, and to challenge the conditions of their confinement free from unreasonable interference from prison staff. *See Lewis v. Casey*, 518 U.S. 343, 355 (1996). The Constitution imposes affirmative obligations on prison authorities to "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828.  A prisoner's access to the courts must be adequate, effective, and meaningful. *See Ryland v. Shapiro*, 708 F.2d 967, 972 (5th Cir. 1983).

A denial of access to courts claim under 42 U.S.C. 1983 must allege an "actual injury." *See Lewis*, 518 U.S. at 349, 351-53; *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To meet this requirement, a plaintiff must show that the actions of the prison officials "hindered the prisoner's efforts to pursue a non-frivolous claim." *Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir. 1996); *accord Lewis*, 518 U.S. at 353; *Myers v. Hundley*, 101 F.3d 542, 544 (8th Cir. 1996); *Stewart v. Block*, 938 F.Supp. 582, 586 (C.D. Cal. 1996) (plaintiff must show a specific instance in which he was actually denied access to the courts" (internal quotation marks omitted)). The requirement that the plaintiff allege an actual injury "is not satisfied by just

9

any type of legal claim." *Lewis*, 518 U.S. at 354. However, the injury requirement is satisfied where, as a result of interference by prison staff, a case is dismissed, where an inmate is unable to file a complaint, or where an inmate misses a court-imposed deadline. *Harbin-Bey v. Rutter, et al.* 420 F.3d 571, 578 (6th Cir. 2005).

The facts, taken in the light most favorable to Plaintiff, are sufficient to show "actual injury." Plaintiff complains that she informed Defendant Borthwell that she would miss a court-imposed deadline if she was not allowed to go on her scheduled "call-out." Defendant Borthwell refused to allow Plaintiff out of her cell and otherwise denied her access to the law library for the duration of the lock-down. Plaintiff alleges that Defendant Moses also prevented Plaintiff form visiting the law library. Plaintiff alleges that Defendant Borthwell refused Plaintiff's request to speak to shift command, and alleges that Defendants Borthwell and Moses refused to deliver her prison legal mail. *See* Am. Compl.¶¶ 15-22. These actions resulted in Plaintiff missing the court-imposed deadline to file her Notice of Appeal and subsequently having her case dismissed. After the deadline passed, Plaintiff alleges that Defendants interfered with Plaintiff's efforts to make filings seeking an extension of the deadline for filing her Notice of Appeal, as well as her efforts to pursue grievances inside the prison. These actions constitute a violation of Plaintiff's constitutional right of access to the courts. *See Harbin-Bey*, 420 F.3d at 578 (actual injury established by "having a cased dismissed" or "missing a court-imposed deadline"); *Nelson v. Gowdy*, No. 03-10116-BC, 2006 WL 2604679 at *2 (E.D. Mich. 2006) ("[a]ssistance in submitting a grievance is a logical and essential step to obtaining access to the courts").

With regard to Defendants' specific arguments, for the reasons set forth below, I conclude the amended complaint (a) sufficiently alleges the personal involvement of the defendants, and genuine issues of material fact exist as to (b) whether the injury to the Plaintiff

was the result of prison regulations reasonably related to a legitimate penological interest, (c) whether Defendants' actions were the result of isolated negligence, and (d) whether Defendants caused Plaintiff's injury.

        a.      *The amended complaint sufficiently alleges the personal involvement of Defendants.*

Defendants argue that summary judgment should be granted because 42 U.S.C. § 1983 does not generally confer a cause of action based on *respondeat superior*. Def.'s Second Mot. Summ. J. at 7. Because the amended complaint sufficiently alleges specific acts and omissions by Defendants Moses and Borthwell, summary judgment based on failure to allege personal involvement of defendants is not warranted.

Generally, allegations premised entirely on vicarious liability are foreclosed in 42 U.S.C. § 1983 actions. *Monell v. Dep't of Social Servs of City of New York*, 436 US 658, 692 (1978); *but see Taylor v. Michigan Department of Corrections*, 69 F.3d 76, 80-81 (6th Cir. 1995) (summary judgment inappropriate in case of warden's alleged knowing failure to prevent violence to vulnerable inmates). Summary judgment is appropriate where a complaint does not sufficiently allege the personal involvement of a defendant in a 42 U.S.C. § 1983 action. *See Veres v. Monroe County*, 364 F. Supp. 1327 (E.D. Mich 1973), aff'd without op., 542 F.2d 1177 (6th Cir. October 26, 1976) (No. 75-2054), petition for cert. den., 431 U.S. 969 (June 13, 1977) (No. 76-6364) (complaint failed to allege "specific acts or omissions" by defendant).

After this motion for summary judgment was filed, the parties stipulated to the dismissal of Plaintiff's claims against four of the six original Defendants. *See* Doc. Ent. 31; Doc. Ent. 33 (dismissing claims against Defendants Watson, Andrews, Chalk, and Stringer-Hill). In addition, after this motion for summary judgment was filed, Plaintiff filed with this Court's permission an

amended complaint with the assistance of newly appointed counsel. *See* Doc. Ent. 35. To the extent the original complaint failed to allege the personal involvement of each Defendant in Plaintiff's injury, this failure was cured by the dismissal of four defendants and the amendment of the complaint following the appointment of counsel for Plaintiff.

With regard to the remaining Defendants, the amended complaint alleges that Moses and Borthwell directly prevented Plaintiff from timely filing her Notice of Appeal. *See* Am. Compl. ¶¶ 15-22. Plaintiff deposes, in an affidavit attached to her response to this motion, that Defendants "denied my requests to allow me to attend my scheduled 'call-out' to the law library or to deliver my legal mail so I could timely sign and file my Notice of Appeal." Pl.'s Resp. Def's Second Mot. Summ. J., Ex. D. These allegations together sufficiently allege specific acts and omissions by each of Defendants.

Because the complaint does sufficiently allege the personal involvement of Defendants Moses and Borthwell in Plaintiff's injury, Defendants are not entitled to summary judgment based on failure to allege personal involvement of defendants.

> b.  *Genuine issues of material fact exist as to whether injury to Plaintiff was the result of prison regulations reasonably related to a legitimate penological interest.*

Defendants argue that the lock-down that resulted in Plaintiff's injury was reasonably related to a legitimate penological interest and accordingly does not give rise to the level of a constitutional violation. Def's Second Mot. Summ. J. at 3. Because defendants have not carried their burden under Rule 56 of showing that no genuine issue of material fact exists as to whether the lock-down as it was specifically enforced against Plaintiff was reasonably related to a legitimate penological interest, summary judgment based on *Turner v. Safley* deference is not warranted.

12

Even where an inmate suffers actual injury, where that injury was the product of prison regulations "reasonably related to legitimate penological interests," that inmate's constitutional right of access to the courts is not violated. *Turner v. Safley*, 482 U.S. 78, 89 (1987). The judgment of prison authorities regarding which prisoner restrictions are justified in a particular set of circumstances is accorded substantial deference. *Lewis*, 518 U.S. at 361. This deferential principle is necessary in order to assure that "prison administrators ... and not the courts ... make the difficult judgments concerning institutional operations." *Turner*, 482 U.S. at 89, quoting *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 128 (1977). For example, where the prison authorities have determined that an inmate is "dangerous and violent," restrictions imposed in furtherance of legitimate penological interests that follow from that determination do not give rise to a constitutional violation even where actual injury results. *See Lewis,* 518 U.S. at 361.

The Supreme Court in *Turner* identified four factors a court should consider when determining the reasonableness of a prisoner restriction: (1) whether a valid, rational connection exists between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the effect that accommodation of the asserted right will have on guards and other inmates, and the allocation of prison resources generally; and (4) the absence of ready alternatives that accommodate the inmates rights at *de minimis* cost to valid penological interests. *Turner* at 89-91. In weighing these factors on a motion for summary judgment, the facts are considered in the light most favorable to the plaintiff. *See* Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 587-88.

13

In general, while Defendants argue that the decision to impose the lock-down that resulted in Plaintiff's injury should be given deference under *Turner v. Safley*, Defendants fail to suggest to the Court a legitimate penological interest that was served by this particular six-day lock-down.[3] In particular, Defendants have not provided the court with a legitimate penological interest that is served by, as Plaintiff deposes, allowing other prisoners to leave their cells during the lock-down while not allowing Plaintiff to attend her "call-out." Pl.'s Resp. Def's Second Mot. Summ. J., Ex. D. Nor have Defendants offered a legitimate penological interest that is furthered by refusing to allow delivery of Plaintiff's urgent legal mail during the lock-down.

Accordingly, the four *Turner* factors weigh in Plaintiff's favor. (1) Because a legitimate governmental interest that favors the specific lock-down conditions has not been provided, a rational connection between that interest and Defendants' conduct cannot be found. (2) Plaintiff appears to have availed herself of all the alternatives within reach during the lock-down. She attempted to meet with the legal writer at the law library as well as to use the prison legal mail, and alleges that she met with Defendants' interference on both fronts. (3) The burden on prison administration of allowing Plaintiff to attend her "call-out" or, alternatively, allowing her to

---

[3]Plaintiff, in her original complaint, suggested that the lock-down was imposed after a resident unit officer misplaced her keys. Compl. at 3. Plaintiff, however, omitted this allegation from her amended complaint and her response to this motion. By way of justification for the lock-down, Defendant offers a paraphrasing of Plaintiff's original complaint (then current): "Plaintiff states that ... Plaintiff's housing unit was locked down for security reasons, due to a resident unit officer's keys of the housing unit turning up missing." Def.'s Second Mot. Summ. J. at 3-4, citing Compl. at 3. Elsewhere Defendants refer to "a security breach" that preceded the lock-down. *Id*. at 4. In general, Defendants have made no suggestion that Plaintiff was "dangerous and violent," or otherwise deserved the specific restrictions placed on her during the lock-down. *See Lewis* 518 U.S. at 343. The burden is on Defendants in making this motion to provide a legitimate penological interest served by the restrictions. While *Turner v. Safley* demands substantial deference to the penological decisions of prison authorities, this Court is not in a position to invent a justification for Defendants' actions where one is not provided.

14

receive her mail, appears slight when compared with Plaintiff's injury. (4) With regard to the fourth *Turner* factor, without a legitimate penological interest being offered as a justification for the lock-down, the consideration of available alternatives that satisfy the legitimate penological interest is an impossibility.[4]

In the absence of any legitimate penological interest to which Defendants' actions can be attributed at this stage of the proceedings, this Court should conclude that there exists a genuine issue of material fact as to whether the lockdown was "reasonably related to legitimate penological interests." Because Defendants have not carried their burden under Rule 56, this Court is not in a position to grant summary judgment based on deference to prison authorities under *Turner v. Safley*.

> c.       *Genuine issues of material facts exist as to whether Defendants' actions were the result of isolated negligence.*

Defendants argue that summary judgment is appropriate because the actions of Defendants represented at most "isolated negligence." Def.'s Second Mot. Summ. J. at 5. Viewed in the light most favorable to Plaintiff, Defendants' actions were more than isolated negligence, so summary judgment based on the absence of allegations other than isolated negligence is not warranted.

An isolated incident of negligence does not rise to the level of a constitutional violation under 42 U.S.C. § 1983. *Kincaid v. Vail*, 969 F.2d 594, 602 (7th Cir. 1992) (clerk's negligent failure to file complaint not actionable). On the other hand, where a plaintiff alleges conduct that is intentional or knowing, summary judgment is inappropriate. *Bailey v. Andrews*, 811 F.2d 366,

---

[4]If the reason for the lock-down was indeed the loss of a residential unit officer's keys, it is difficult to see why, over a span of several days, the required paperwork could not be collected and presented to the Plaintiff to sign, while ensuring that the missing keys were not accidentally transmitted, at *de minimis* cost.

371 (7th Cir. 1987) (summary judgment inappropriate where there is a question of fact as to whether defendant's conduct is intentional); *Gregory v. Nunn,* 895 F.2d 413, 415 (7th Cir. 1990) (summary judgment inappropriate where there is a question of fact as to whether defendant's conduct is knowing).

In this case, Plaintiff alleges that she informed Defendants that she would miss a court-imposed deadline if she was not allowed to attend her "call-out" or receive her mail. Thus, in the light most favorable to Plaintiff, Defendants acted with at least knowledge that their actions would cause Plaintiff's injury. Further, Plaintiff does not allege one "isolated" incident, but a pattern of obstruction that involved refusal to allow Plaintiff to attend her "call-out" for the duration of the lock-down while other prisoners were allowed out of their cells, refusal to deliver Plaintiff's mail, and interference with Plaintiff's appeals to prison authorities and subsequent grievances.

Because Defendants' actions, viewed in the light most favorable to Plaintiff, represent more than isolated negligence, summary judgment based on the absence of allegations other than negligence would be inappropriate.

> d.  *Genuine issues of material fact exist as to whether Defendants caused Plaintiff's injury.*

Defendants argue that the facts, viewed in the light most favorable to Plaintiff, do not show that Defendants actually caused Plaintiff's injury. Def.'s Second Mot. Summ. J. at 3-4. Defendants place emphasis on the timing of Defendants' alleged actions with respect to the filing deadline. In particular, Defendants contend that the facts, viewed in the light most favorable to Plaintiff, only indicate Defendants' interference beginning on the twenty-fifth day of the thirty days during which Plaintiff was required to file her Notice of Appeal. Defendants urge that

16

because Plaintiff "waited until the last minute" by failing to avail herself of the weeks leading up to the lock-down to file her Notice of Appeal, Plaintiff has essentially failed to allege that Defendants caused her injury. This argument does not entitle Defendants to summary judgment for two reasons. First, the Plaintiff has alleged that she was forced to wait until the last minute because she was not provided with the correct forms until three days before the Notice of Appeal was due, and that she generally encounters difficulty and delay in any transactions involving writing as a result of her illiteracy. *See* Pl.'s Resp. Def's Second Mot. Summ. J., Ex. C; Am. Compl. ¶¶ 8-13. Second, Defendants have not cited any authority that suggests that it makes a difference whether a complaint alleges obstruction of an inmate's access to the courts beginning on the first, twenty-fifth, or last day of a court-imposed filing deadline.

Because the amended complaint (a) sufficiently alleges the personal involvement of the defendants, and genuine issues of material fact exist as to whether (b) injury to Plaintiff was the result of prison regulations reasonably related to a legitimate penological interest, (c)  whether Defendants' actions were the result of isolated negligence, and (d) whether Defendants caused Plaintiff's injury, the facts, viewed in the light most favorable to Plaintiff, show that Defendants violated Plaintiff's constitutional right of access to courts.

2.   *Defendants are not protected from this action by the Eleventh Amendment or qualified immunity.*

Defendants argue that even if the facts, considered in the light most favorable to Plaintiff, show that Defendants violated Plaintiff's constitutional right of access to the courts, Defendants are nonetheless entitled to summary judgment because (a) Defendants are protected from 42 U.S.C. § 1983 actions brought against them in their official capacities by the Eleventh Amendment, and (b) Defendants are entitled to qualified immunity because Defendants violated

17

a constitutional right that was not clearly established. For the reasons below, I conclude that Defendants are entitled neither to Eleventh Amendment immunity nor qualified immunity.

        *a.    Defendants are not entitled to Eleventh Amendment immunity because the Plaintiff sues Defendants in their individual capacities.*

Defendants argue that the Eleventh Amendment as interpreted by the Supreme Court protects them from a suit against them in their official capacities. Def.'s Second Mot. Summ. J. at 10; *see Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989); *Hans v. Louisiana*, 134 U.S. 1 (1890). To the extent that Plaintiff sued defendants in their official capacities in her original complaint, this was cured by the amended complaint, which was filed after this motion. The amended complaint indicates that Defendants are sued exclusively in their individual capacities. Am. Compl. at 6. Accordingly, summary judgment based on Eleventh Amendment immunity is inappropriate.

        *b.    Defendants are not entitled to qualified immunity because Plaintiff's constitutional right of access to the courts was clearly established under the circumstances.*

Defendants argue that even if Plaintiff has successfully alleged the violation of a constitutional right, that the constitutional right was not clearly established and that Defendants are entitled to qualified immunity. Def's Second Mot. Summ. J. at 8. Because the facts, viewed in the light most favorable to Plaintiff, are sufficient to establish a violation of a clearly established constitutional right, summary judgment based on qualified immunity is inappropriate.

There are two prongs to the qualified immunity analysis, and courts may consider them in any order. *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009). In the first prong, considered already, the court determines whether the facts, taken in the light most favorable to Plaintiff,

show the violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). In the second prong, considered below, the court considers whether the constitutional right was clearly established at the time of the alleged violation. *Id.*

The qualified immunity doctrine ensures that government officials and employees, including prison staff, sued in their individual capacities "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

The definition of the relevant "statutory or constitutional right" for the purposes of the qualified immunity inquiry must be neither too broad nor too narrow. *See Anderson v. Creighton*, 483 U.S. 639-40 (1987). On the one hand, the qualified immunity inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. On the other hand, the purposes of the qualified immunity doctrine would plainly be thwarted if the right a plaintiff asserts could always be defined so narrowly that it would be impossible to find that it was clearly established. *See Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992) (quoting *Anderson*, 483 U.S. at 640) ("[a]lthough it need not be the case that 'the very action in question has previously been held unlawful, ... in the light of pre-existing law, the unlawfulness must be apparent'"); *Siggers-El v. Barlow*, 412 F.3d 693, 703 (6th Cir. 2005) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)) (an official "can still be on notice that ... conduct violates established law even in novel factual circumstances").

At the core of the qualified immunity doctrine is the principle that officers who act reasonably and in good faith in performing their duties are shielded from suits against them in their individual capacities. The qualified immunity doctrine guarantees that an "officer on duty

in the field is entitled to make a reasonable interpretation of the law he is obligated to enforce."
*Habiger v. City of Fargo*, 80 F.3d 289, 296 (8th Cir. 1996), cert. denied, 519 U.S. 1011 (1996).
The qualified immunity inquiry focuses on the objective reasonableness of the officer's conduct
in light of the circumstances: "the purpose of the qualified immunity doctrine is to provide ample
room for Government officials' mistaken judgments and to protect 'all but the plainly
incompetent or those who knowingly violate the law.'" *Id.* at 297 (quoting *Malley v. Briggs*, 475
U.S. 335, 341 (1986)). Conversely, qualified immunity is not available where it would be "clear
to a reasonable officer that his conduct was unlawful in the situation that he confronted."
*Saucier,* 533 U.S. at 201.

The  constitutional right of access to the courts has been described as "one of, perhaps
*the*, fundamental constitutional right." *Cruz v. Hauck*, 475 F.2d 475, 476 (5th Cir. 1973)
(emphasis in original) (remanding for consideration whether prison regulations unreasonably
invade "relationship of the prisoner to the courts"). An objectively reasonable prison officer is on
notice that the Constitution requires that she must not only refrain from standing in the way of a
prisoner's access to the courts, but also that she take affirmative steps to ensure that a prisoner's
access is adequate, effective, and meaningful. *Ryland*, 708 F.2d at 972. That officer is also on
notice that if she fails in these obligations, she may be liable to the prisoner under 42 U.S.C. §
1983. *Id.*

In the specific circumstances of this case, the facts, taken in the light most favorable to
Plaintiff, are sufficient to show that Defendants violated Plaintiff's constitutional right to access
the courts by preventing her from receiving legal mail and by preventing her from meeting with
a legal writer where she could not complete her filing alone.

20

First, with regard to interference with an inmate's receipt of legal mail, that the "unimpeded transmission of inmate legal mail is the 'most obvious and formal manifestation' of the right of access to the courts has been clearly established for some time now." *Simkins v. Bruce*, 406 F.3d 1239, 1243 (10th Cir. 2005).

Second, with regard to Plaintiff's right to meet with a legal writer where she could not complete her filing alone, Plaintiff does not cite any authority holding directly that summary judgment based on qualified immunity is inappropriate where an illiterate plaintiff missed a filing deadline and had the case dismissed as a result of being prevented from meeting with a legal writer during a lock-down. *But see Martin v. Lane, et al.*, 766 F.Supp. 641, 646 (N.D. Ill. 1991) (indicating summary judgment would not be granted based on qualified immunity if plaintiff suffered actual injury under otherwise similar circumstances). However, a right may be clearly established even if a court has not already identified a violation of the right in factually equivalent circumstances. *See Russo*, 953 F.2d at 1042; *Siggers-El*, 412 F.3d at 703. Although Plaintiff's factual circumstances are novel, the general contours of Plaintiff's right to meet with her legal writer before the Notice of Appeal was due – and the apparent unlawfulness of the violation of that right – would have been sufficiently clear to the objectively reasonable official in Defendants' position. *See, e.g., Bounds*, 430 U.S. at 828 (requiring prison authorities to "assist inmates in the preparation and filing of meaningful legal papers").

Ultimately, objectively reasonable prison officers in Defendants' position would have known that they may not knowingly and without legitimate penological justification[5] cause an

---

[5]I addressed above Defendants' argument in favor of exercising *Turner v. Safley* deference, and I considered the objective reasonableness of the lock-down as it was enforced against Plaintiff in relation to legitimate penological interests. The result of that inquiry militates against a conclusion that, viewing the facts in the light most favorable to Plaintiff, Defendants' actions were objectively reasonable.

illiterate inmate to miss a filing deadline and have a case dismissed by preventing the inmate both from meeting with legal assistants and from receiving legal mail. The facts, taken in the light most favorable to Plaintiff, indicate that Defendants acted in a way that objectively reasonable officers would have known was unlawful. *See Saucier,* 533 U.S. at 201. Accordingly, because genuine issues of material fact exist as to whether Defendants violated a constitutional right that was clearly established, Defendants are not entitled to qualified immunity.

Because Defendants are entitled neither to Eleventh Amendment immunity nor qualified immunity, summary judgment is not warranted.

E.     *Conclusion*

In view of the foregoing, the Court should conclude that Defendants have not satisfied their burden under Rule 56(c). Accordingly, the Court should deny Defendants' second motion for summary judgment, Doc. Ent. 25.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Sullivan* , 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

<div style="margin-left: 40%;">
s/Paul J. Komives<br>
PAUL J. KOMIVES<br>
UNITED STATES MAGISTRATE JUDGE
</div>

Dated: June 3, 2009

_____

## CERTIFICATE OF SERVICE

I hereby certify on June 3, 2009 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on June 3, 2009: **None.**

<div style="margin-left: 40%;">
s/Michael E. Lang<br>
Deputy Clerk
</div>