UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HATTIE TANNER,

        Plaintiff,

                              CASE NO. 07-14579
v.                          HON. JOHN CORBETT O'MEARA
                              MAGISTRATE JUDGE PAUL J. KOMIVES

KATRINA BORTHWELL
and VERNITA MOSES,

        Defendants.
_____/

**OPINION AND ORDER DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Hattie Tanner is an inmate in the custody of the Michigan Department of Corrections ("MDOC") and is currently incarcerated at the Women's Huron Valley Correctional Facility ("WHV") in Ypsilanti, Michigan. On October 26, 2007, while incarcerated at the Robert Scott Correctional Facility ("SCF") in Plymouth, Michigan, Plaintiff filed this *pro se* civil rights action under 42 U.S.C. § 1983, claiming that SCF staff defendants Watson, Andrews, Chalk, Stringer-Hill, Borthwell and Moses violated her rights under the U.S. Constitution by impeding her access to the courts.

This court has previously ruled upon two dispositive motions in this case. Defendants Watson, Borthwell, Moses, and Stringer-Hill filed a motion for summary judgment on January 7, 2008, arguing lack of exhaustion under the Prison Litigation Reform Act. On August 6, 2008, the court entered an order adopting Magistrate Judge Komives's July 17, 2008 report and recommendation and denying the January 7, 2008 dispositive motion.

1

On November 10, 2008, defendants Borthwell, Stringer-Hill, Moses and Watson filed a motion for summary judgment and dismissal.  On August 10, 2009, the court entered an order adopting the June 3, 2009 report and recommendation of Magistrate Judge Komives and denying the motion.

On January 21, 2009, the parties stipulated to the dismissal of Plaintiff's claims against defendants Watson, Andrews, Chalk, and Stringer-Hill.  Therefore, the only remaining defendants are Borthwell and Moses.

On January 23, 2009, this court granted Plaintiff leave to amend her complaint for the purposes of omitting claims pertaining to dismissed parties and clarifying the factual allegations in the initial complaint.  Five (5) days later, on January 28, 2009, Plaintiff filed an amended complaint against defendants Borthwell and Moses.  The sole cause of action in the amended complaint is denial of access to the courts.  Plaintiff's demand for judgment seeks an award of compensatory and punitive damages, as well as interests and costs, including reasonable attorney fees.

Pursuant to Magistrate Judge Komives's July 26, 2010 scheduling order, the discovery deadline was September 15, 2010, and the dispositive motion deadline was October 15, 2010.  However, the discovery deadline was extended by stipulation to December 15, 2010.  Ultimately, the dispositive motion deadline was extended by stipulation to March 15, 2011.

Currently before the court is defendants Borthwell and Moses's March 15, 2011 motion for summary judgment.[1]  Defendants argue that they are entitled to qualified immunity because

---

[1]Docket Entry #54 is only the motion itself.  Number  55 contains the motion, the brief and several attachments.  The court will deem these one motion.

Tanner has shown nothing more than negligence.

On March 18, 2011, the court entered an order requiring Plaintiff to file any response on or before April 18, 2011. Plaintiff filed her response on April 18, 2011; and Defendants filed a reply on May 6, 2011.

## **STANDARD OF REVIEW**

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. The party against whom relief is sought may move for summary judgment at any time. Fed. R. Civ. P. 56(b). Summary judgment will be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A court considering a motion for summary judgment views all facts and inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The burden is initially on the moving party to show the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). A court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

Responding to a motion under Rule 56(c), the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris*

3

*Companies, Inc.*, 8 F.3d 335, 339-40. (6th Cir. 1993). When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street* 886 F.2d at 1479-80. Instead, the court may rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404 (6th Cir. 1992).

After examining the evidence designated by the parties, the court determines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

## LAW AND ANALYSIS

On November 7, 2005, Judge Victoria Roberts entered judgment denying Plaintiff's petition for a writ of *habeas corpus* in *Tanner v. Yukins*, Case No. 04-71155 (E.D. Mich.). Pursuant to Fed. R. App. P. 4(a)(1)(A), Plaintiff had thirty (30) days to file her Notice of Appeal with this court. The parties do not dispute that Plaintiff's notice of appeal had to be filed by December 8, 2005. Because Plaintiff is functionally illiterate, Plaintiff requested that a prison legal writer assist her in preparing a Notice of Appeal and Motion for Leave to Proceed on Appeal *in forma pauperis*. On or about November 15, 2005, Plaintiff met with the legal writer[2] to discuss her case. On or about November 17, 2005, with the assistance of the legal writer,

---

[2]In her August 31, 2009 deposition, plaintiff mentions Gail Guzikowski, currently at WHV, as a legal writer, as well as Sybil Padgett and Julia Wigley, both currently at WHV, as people who helped her with paperwork.

Plaintiff requested that SCF release a Certificate of Account Activity to append to her motion for leave to proceed on appeal *in forma pauperis* as required by Fed. R. App. P. 24(a)(5). However, SCF returned a certificate for the incorrect time period.

Plaintiff made a second request for a Certificate of Account Activity; and the correct certificate was prepared by SCF on December 5, 2005, and received by the legal writer that day-- only three days before the filing deadline. The legal writer scheduled a "call-out" for Plaintiff to visit the law library on December 6, 2005, to sign her prepared notice of appeal and motion for leave to proceed on appeal *in forma pauperis*.

Plaintiff's housing unit, Auburn A, was on "lock-down" status from December 3, 2005, to December 8, 2005. According to Watson, the warden had authorized the lock-down. Defendants Borthwell and Moses explain that "[d]uring the week of December 2, 2005, high ranking officials from [WHV] placed Plaintiff's unit on 'lockdown' because a set of keys to the facility were missing." Defs.' mot. br. at 5.

According to Plaintiff, defendant Borthwell refused Plaintiff's repeated requests to allow her to attend her "call-out" to the law library on December 6, 2005. When Plaintiff explained that she needed to go to the law library to sign her notice of appeal because of her filing deadline, Defendant Borthwell allegedly replied, "too bad." Defendant Moses also refused to allow Plaintiff to attend her "call-out" to the law library, stating that she could not allow any prisoner movement in Plaintiff's residential unit.

Several other inmates in Plaintiff's residential unit, however, were permitted to attend scheduled medical "call-outs" or leave the residential unit for other reasons during the lock-down. For example, on Wednesday, December 7, 2005, Borthwell signed a yard pass for Lynn Cuadra to go to the mental health center for outpatient therapy; and on Thursday, December 8,

5

2005, Borthwell signed a yard pass for D. Alexander to go to Room 232 for GED testing. Plaintiff requested to speak to shift command about her urgent need to attend her "call-out" to the law library, but defendant Borthwell refused Plaintiff's request.

Because Plaintiff could not attend her "call-out" to the law library, the legal writer sent her the prepared notice of appeal and motion for leave to proceed on appeal *in forma pauperis* via inter-institutional mail on December 6, 2005, for Plaintiff to sign and file. Plaintiff repeatedly requested that Defendants deliver her legal mail. Plaintiff, however, did not receive her notice of appeal and motion for leave to proceed on appeal *in forma pauperis* until December 8, 2005, after the 4:00 p.m. count, when there was no prison staff member available to mail the documents on her behalf to meet the December 8, 2005 deadline.

Plaintiff signed her filings and placed them in the hands of defendant Moses for mailing as soon as possible at 10:45 a.m. the morning of December 9, 2005. An expedited legal mail receipt was filed for Plaintiff that day; and her notice of appeal was received and filed by this court on December 13, 2005.[3]

On December 23, 2005, this court granted Plaintiff a certificate of appealability on two of her habeas claims. However, because compliance with Fed. R. App. P. 4(a) is mandatory, *Baker v. Raulie*, 879 F.2d 1396, 1398 (6th Cir. 1989) (per curiam), the Sixth Circuit ordered that Plaintiff's appeal be dismissed.

Prior to September 2006, Plaintiff repeatedly requested of Defendants and others, verbally and in writing, "to provide her with verification of the lock-down status of her

---

[3] Because a *pro se* prisoner's notice of appeal is considered "filed" under Fed. R. App. P. 4(a)(1) at the moment of delivery to prison authorities for forwarding to the district court, *Houston v. Lack*, 487 U.S. 266, 266 (1988), Plaintiff's notice of appeal is considered filed as of December 9 and not December 13. Regardless, both dates are past the December 8 deadline.

residential unit for the dates of December 3, 2005 to December 8, 2005 to assist her in her federal habeas appeal." Am. Compl. at ¶ 36. On April 25, 2007, Plaintiff received the requested verification.

Plaintiff describes her September 18, 2007 motion for relief from judgment or order; her October 10, 2007 motion for reconsideration; and her October 23, 2007 notice of appeal filed on October 12, 2007 as "explaining that her untimely filing was due to the lock-down of her residential unit from December 3, 2005 to December 8, 2005, and Defendants' refusal to permit her to attend her law library 'call-out' on December 6, 2005 or to deliver her legal mail so that she could sign and file the Notice of Appeal prepared for her by the prison legal writer." *Id*. at ¶ 27.[4]

On September 26, 2007, Judge Roberts denied the motion for relief from judgment; and on October 12, 2007, she denied the motion for reconsideration. Then, on October 31, 2007, Judge Roberts entered an order in Plaintiff's habeas case denying a certificate of appealability and denying leave to proceed on appeal *in forma pauperis*. On August 5, 2008, the Sixth Circuit entered an order in Plaintiff's habeas case denying her request for a certificate of appealability and denying as moot her motion for pauper status.

---

[4]During 2006, Plaintiff filed at least three grievances: SCF-2006-07-02397-28e; SCF-2006-12-04067-28e; and SCF-2006-12-04213-03f. SCF-04213 alleged that librarian Leach failed to process Plaintiff's appeal and asked for Librarian Leach or the warden to verify that SCF "Auburn A" had been on lockdown.

7

Magistrate Judge Komives's June 3, 2009 report and recommendation, which the court accepted and adopted on August 10, 2009, reached two conclusions. First, he concluded, "[t]he facts, viewed in the light most favorable to Plaintiff, show Defendants violated Plaintiff's constitutional right of access to the courts[.]" June 3, 2009 R & R at 8-17. Within this recommendation, he noted that (a) "[t]he amended complaint sufficiently alleges the personal involvement of Defendants[,]"[5] (b) "[g]enuine issues of material fact exist as to whether injury to Plaintiff was the result of prison regulations reasonably related to a legitimate penological interest[,]" (c) "[g]enuine issues of material facts exist as to whether Defendants' actions were the result of isolated negligence[,]" and (d) "[g]enuine issues of material fact exist as to whether Defendants caused Plaintiff's injury." *Id*.

Second, he concluded, "defendants were not protected from this action by the Eleventh Amendment or qualified immunity[.]" *Id*. at 17-22. Within this recommendation, he noted that (a) "[d]efendants are not entitled to Eleventh Amendment immunity because the Plaintiff sued Defendants in their individual capacities[,]" and (b) "[d]efendants are not entitled to qualified

---

[5]This portion of the report and recommendation stated the following with respect to defendants Moses and Borthwell:

> Because the amended complaint sufficiently alleges specific acts and omissions by Defendants Moses and Borthwell, summary judgment based on failure to allege personal involvement of defendants is not warranted. . . .
>
> [T]he amended complaint alleges that Moses and Borthwell directly prevented Plaintiff from timely filing her Notice of Appeal.
>
> Because the complaint does sufficiently allege the personal involvement of Defendants Moses and Borthwell in Plaintiff's injury, Defendants are not entitled to summary judgment based on failure to allege personal involvement of defendants.

*Id*. at 11-12.

immunity because Plaintiff's constitutional right of access to the courts was clearly established under the circumstances."

Plaintiff was deposed on August 31, 2009, three weeks after the entry of this court's August 10, 2009 order. Tanner described Moses as "a very nice person." Tanner thought that Moses would try to help her, and Tanner did not feel that Moses was "trying to hurt [Tanner] in any way[.]" Tanner dep. at 40. However, Tanner also testified that during the week of December 6, 2005, she tried to talk to Vernita Moses but did not.

Tanner also answered questions about Borthwell. To begin, Tanner thought that Borthwell had an attitude back in December 2005. Id. at 41. According to Plaintiff, she approached Borthwell about library callout, but Borthwell responded that there were no movements. Plaintiff responded that she had a callout for her legal work. Plaintiff also mentioned that she had a deadline. Borthwell responded, "I don't think they're going to make it." Plaintiff asked Borthwell if she could ask Moses about Plaintiff's deadline. Borthwell did so, but when she returned she stated, "Ms. Moses said she was under order." Tanner claims she asked Borthwell about contacting a shift commander or someone else; however, Borthwell responded that it was an order, and no one was moving in and out of the unit.

Tanner did not know for a fact that the conversation with Borthwell occurred on December 6; however, Tanner thought it was the same day she was on callout and agreed that "it was probably a couple of days before the date that this was due that [she] had this discussion with . . . Borthwell[.]" *Id.* at 43, 50.

9

Tanner attested that she did not "recall having any discussions with any [MDOC] officials, corrections officers, ARUS's, RUM's, anybody, on [December 7] about [her] legal papers[.]" Id. at 51-52.  Tanner agreed that she received the papers at issue around 4:00 p.m. on December 8.  Plaintiff recalled attempting to find Moses that day to have her papers mailed; however, Moses was gone for the day.  According to Plaintiff, she gave Moses the legal mail on December 9, 2005.  *Id*. at 53-55.

Defendant Katrina Borthwell was deposed on September 24, 2010.  Borthwell explained that each unit has a mailbox, a prisoner could put the mail or a kite in the mailbox him or herself, and "[a]ll mail is picked up on the midnight shift."  Borthwell dep. at 27.  However, Borthwell also explained that expedited legal mail at SCF goes through the ARUS's such as Moses and that there must be a signature and time on it.  *Id*.  As for delivery of mail to an inmate, Borthwell explained that it is passed out by the second shift (2:00 p.m. to 10:00 p.m.) staff.  *Id*. at 29.  Borthwell also testified about the December 7 yard pass to inmate Cuadra and the December 8 yard pass to inmate Alexander.

In the instant motion for summary judgment, defendants Borthwell and Moses contend that they are entitled to qualified immunity because "Tanner has shown nothing more than negligence."  Defs.' mot. br. at 6-10.  It is defendants Borthwell and Moses's position that "Tanner cannot satisfy either prong of the *Pearson* test."  *Id*. at 7.

The United States Supreme Court has stated, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

10

reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 817-818 (1982).[6]

The Sixth Circuit has stated that the qualified immunity inquiry requires a three-step analysis: "First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999) (citing *Dickerson v. McClellan*, 101 F.3d 1151, 1157-58 (6th Cir.1996)).[7]

"Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity." *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006) (citing *Barrett v. Steubenville City Schools*, 388 F.3d

---

[6]Furthermore, "[u]ntil this threshold immunity question is resolved, discovery should not be allowed." *Harlow*, 457 U.S. at 818-819.

[7]*See also Saucier v. Katz*, 533 U.S. 194 (2001), wherein the Supreme Court stated, "A court required to rule upon the qualified immunity issue must consIder, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry." *Saucier*, 533 U.S. at 201 (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Saucier*, 533 U.S. at 201. *See also Drogosch v. Metcalf*, 557 F.3d 372, 377 (6th Cir. Feb. 25, 2009) (citing *Saucier*, 533 U.S. at 201). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.
In 2009, the Supreme Court stated, "[a]lthough we now hold that the *Saucier* protocol should not be regarded as mandatory in all cases, we continue to recognize that *it is often beneficial*." *Pearson v. Callahan*, 129 S.Ct. 808, 818 (Jan. 21, 2009) (emphasis added).

967, 970 (6th Cir.2004)).

Importantly, the defense of qualified immunity is best addressed after determining whether a plaintiff has stated a constitutional claim upon which relief can be granted. "[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all. Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question." *County of Sacramento v. Lewis*, 523 U.S. 833, 842 n.5 (1998), citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).

In this case defendants Borthwell and Moses argue that Plaintiff cannot set forth a constitutional violation. They explain that, "because of the lockdown, the legal writer was not allowed to deliver the Notice to the Plaintiff and Tanner was prohibited from leaving her cell to go to the law library in order to retrieve, review, sign and file her Notice of Appeal." Furthermore, defendants contend, "[e]vidence suggests that the Defendants did not know that the Plaintiff had time-sensitive legal documents that required filing while the lockdown was in place." Defs.' mot. br. at 6.

In support of their argument that Plaintiff has, at most, alleged negligence, Defendants point to Tanner's testimony about her interaction with Borthwell on or about December 6, 2005, as well as Tanner's impression that Moses was not trying to hurt Plaintiff and that Moses tried to help her.

Also, Defendants contend "nothing [they] did actually prevented Tanner from filing her Notice of Appeal on her own or with assistance from another prisoner in her own unit." All Plaintiff had to do, Defendants argue, was "submit a single piece of paper to the District Court indicating that she intended to appeal Judge Roberts' decision." In other words, Plaintiff did not

12

need to wait for a legal brief from her legal writer. *Id.* at 8.

Additionally, it is Defendants' position that Tanner "offered no testimony that either [Borthwell or Moses] refused to accept mail of any kind." *Id.* at 8-9. Even if their behavior inhibited Plaintiff from meeting with a specific, legal writer prisoner by December 8, 2005, Borthwell and Moses "did not inhibit [Plaintiff] from taking other actions to perfect her appeal." Defendants speculate that Tanner "could have asked another prisoner in her housing unit to assist her." *Id.* at 9.

Furthermore, in anticipation of an argument that Plaintiff's illiteracy "did not permit her to file anything on her own[,]" Defendants note that "an inmate's lack of legal training, his poor education, or even his illiteracy does not give a court reason to toll the statute of limitations[.]" *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002). Also, Defendants claim nothing they did "prevented Tanner from seeking an extension of time in the District Court pursuant to [Fed. R. App. P.] 4(a)(5)."[8] *Id.*

It is also Defendants' position that even if Tanner received the materials around 4:00 p.m. on December 8, 2005, and Moses had already left for the day, nothing they did "prevented Tanner from depositing her Notice of Appeal in the institutional mail system on December 8, 2005." According to Borthwell and Moses, nothing prevented Tanner "from seeking out another staff member to accept her legal mail[,]" and, even if other SCF staff members refused to accept Tanner's mail, "Tanner could have submitted an affidavit to the District Court [or Sixth Circuit] which indicated that she complied with the 'prisoner mailbox rule' set forth in Habeas Rule

---

[8]Fed. R. App. P. 4(a)(5) governs motions for extension of time.

3(d)[9] by attempting to give her legal mail to a staff member or placing it in a prison mailbox in her housing unit on December 8, 2005." *Id*. at 9.

Plaintiff responds that Borthwell and Moses's conduct violated her constitutional right of access to the courts. Specifically, Plaintiff contends that Defendants' actions deprived her of access to the courts, Defendants acted "with the knowledge that their actions would deprive Plaintiff of access to the courts," and "Defendants' interference with Plaintiff's ability to receive legal mail or assistance was not reasonably related to a legitimate penological interest[.]" Pl.'s resp. br. at 16-17.

Attached to Defendants' May 6, 2011 reply is the May 4, 2011 affidavit of Mound Correctional Facility (NRF) Administrative Assistant Felipe Perea, who was an Administrative Assistant at SCF during the events in question. Perea states that "[d]uring the time frame of December 5, 2005 through December 8, 2005 there were mailboxes in each housing unit for outgoing U.S. Mail from prisoners and such a mailbox was available for Plaintiff's use." Perea aff. ¶ 4. Therefore, Borthwell and Moses contend, "Tanner still could have deposited her Notice of Appeal in the mailbox and complied with the prison mailbox rule." Defs.' reply at 4.

However, Plaintiff's August 31, 2001 deposition testimony; Borthwell's September 24, 2010 deposition testimony; and Perea's May 4, 2011 affidavit do not change the conclusions reached by Magistrate Judge Komives in his June 3, 2009 report and recommendation. For example, it is still the case that genuine issues of material fact exist as to whether injury to

---

[9]Rule 3(d) of the Rules Governing Section 2254 Cases provides that "[a] paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing. If an institution has a system designed for legal mail, the inmate must use that system to receive the benefit of this rule. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid."

Plaintiff was the result of prison regulations reasonably related to a legitimate penological interest, specifically noting that the *Turner v. Safley,* 482 U.S. 78 (1987), factors weighed in Plaintiff's favor.  June 3, 2009 R & R at 14-15.

Furthermore, notwithstanding Tanner's description of Moses as "a very nice person[,]" or Tanner's impression that Moses would try to help her, or the statement that Tanner did not feel that Moses was "trying to hurt [Tanner] in any way[,]" it is still the case that genuine issues of material fact exist as to whether Defendants' actions were the result of isolated negligence.  As Magistrate Judge Komives stated:

> In this case, Plaintiff alleges that she informed Defendants that she would miss a court imposed deadline if she was not allowed to attend her 'call-out' or receive her mail.  Thus, in the light most favorable to Plaintiff, Defendants acted with at least knowledge that their actions would cause Plaintiff's injury.  Further, Plaintiff does not allege one 'isolated' incident, but a pattern of obstruction that involved refusal to allow Plaintiff to attend her 'call-out' for the duration of the lock-down while other prisoners were allowed out of their cells, refusal to deliver Plaintiff's mail, and interference with Plaintiff's appeals to prison authorities and subsequent grievances.

*Id*. at 16.

Finally, it is still the case that genuine issues of material fact exist as to whether Defendants caused Plaintiff's injury, regarding which Magistrate Judge Komives noted in part, "Plaintiff has alleged that she was forced to wait until the last minute because she was not provided with the correct forms until three days before the Notice of Appeal was due, and that she generally encounters difficulty and delay in any transactions involving writing as a result of her illiteracy."  *Id*. at 17.  As noted above, Perea's statement about the availability of mailboxes

15

is countered by Borthwell's explanation that expedited legal mail at SCF goes through the ARUS's, such as Moses, and that there must be a signature and time on it. Perea's aff. at 27-28.

Citing *Holzemer v. City of Memphis*, 621 F.3d 512, 527 (6th Cir. 2010) and *Hope v. Pelzer*, 536 U.S. 730, 741 (2002), Defendants contend that they "could not have been on notice that their conduct violated clearly established law." Borthwell and Moses submit that "[w]hile inmates undoubtedly had a generic right of access to the courts well before 2005," they "could not find a published case similar to the instant case." Thus, they submit, "reasonable prison officials would not have known that . . . the actions they took in December 2005 violated clearly established law." Defs.' mot. br. at 10.

Plaintiff responds that her constitutional right of access to the courts was clearly established at the time of the incident(s) in question, "as it would be clear to reasonable officials in Defendants' positions that their conduct violated Plaintiff's constitutional rights." Pl.'s resp. br. at 17-18. Plaintiff argues that "[r]easonable officers in Defendants' positions would understand that they would violate Plaintiff's constitutional right of access to the courts by refusing to deliver Plaintiff's legal mail or to allow Plaintiff access to the law library, while knowing that their actions would interfere with Plaintiff's ability to timely file her Notice of Appeal with the Court." *Id*. Citing *Bounds v. Smith*, 430 U.S. 817, 828 (1977) and *Simkins v. Bruce*, 406 F.3d 1239, 1243 (10th Cir. 2005),[10] Plaintiff claims that "[t]he constitutional right of access to the courts, with its guarantees of reasonable access to a law library and unimpeded

---

[10]"[T]he principle that unimpeded transmission of inmate legal mail is the 'most obvious and formal manifestation' of the right of access to the courts has been clearly established for some time now." *Simkins v. Bruce*, 406 F.3d 1239, 1243 (10th Cir. 2005) (internal citation omitted).

transmission of legal mail, was well established at the time of Defendants' actions." *Id.* at 18-19. Furthermore, plaintiff cites *Martin v. Lane*, 766 F.Supp. 641, 646 (N.D. Ill. 1991), wherein the district court stated:

> Martin claims that he was denied access to the law library. 'It is now established beyond doubt that prisoners have a constitutional right of access to the courts.' *Bounds v. Smith*, 430 U.S. 817, 821[] (1977). The natural extension of that guarantee is providing prisoners with reasonable access to law libraries. From Martin's account, it appears that prisoners could not gain access to the law library or meet with law clerks while the prison was in lockdown. This is the beginning of an actionable claim. However, to establish meaningful denial of access to the courts, a prisoner must take his assertions one step further and make at least some showing of prejudice. *Bruscino v. Carlson*, 854 F.2d 162, 167 (7th Cir.1988)[]; *[Martin v.] Davies*, 694 F.Supp. [528][,] 529 [(N.D. Ill. 1988)]. Martin has not made such a showing here. When asked in his deposition whether he had suffered harm from his inability to use the law library, Martin could not put his finger on any prejudice. (Dep. at 60–62.) Although the lack of access to the library had caused him to delay the submission of motion papers in one of his cases, he was not penalized for his late filing. Without a showing of prejudice, Martin cannot sustain this claim.

Therefore, Plaintiff contends, "reasonable officials in Defendants' positions would understand that denying Plaintiff the ability to access the law library or to receive her legal mail during a lock-down, when they knew that their actions would interfere with Plaintiff's timely filing of her Notice of Appeal, and when they permitted others to leave the residential unit for other reasons, would violate Plaintiff's constitutional right of access to the courts." Pl.'s resp. br. at 19.

Defendants reply that "Tanner had an alternative method of sending out her legal mail on December 8, 2005." Defs.' reply at 4-5. Nonetheless, as Magistrate Judge Komives previously stated, "the facts, taken in the light most favorable to Plaintiff, are sufficient to show that Defendants violated Plaintiff's constitutional right to access the courts by preventing her from

17

receiving legal mail and by preventing her from meeting with a legal writer where she could not complete her filing alone." June 3, 2009 R & R at 20.

Specifically, as Magistrate Judge Komives's noted in his report and recommendation:

. . . a right may be clearly established even if a court has not already Identified a violation of the right in factually equivalent circumstances. *See Russo [v. City of Cincinnati]*, 953 F.2d [1036][,] 1042 [(6th Cir. 1992)]; *Siggers-El [v. Barlow]*, 412 F.3d [693][,] 703 (6th Cir. 2005). Although Plaintiff's factual circumstances are novel, the general contours of Plaintiff's right to meet with her legal writer before the Notice of Appeal was due - and the apparent unlawfulness of the violation of that right - would have been sufficiently clear to the objectively reasonable official in Defendants' position. *See*, *e.g.*, *Bounds*, 430 U.S. at 828 (requiring prison authorities to "assist inmates in the preparation and filing of meaningful legal papers").

Magistrate Judge Komives further stated:

Ultimately, objectively reasonable prison officers in Defendants' position would have known that they may not knowingly and without legitimate penological justification cause an illiterate inmate to miss a filing deadline and have a case dismissed by preventing the inmate both from meeting with legal assistants and from receiving legal mail. The facts, taken in the light most favorable to Plaintiff, indicate that Defendants acted in a way that objectively reasonable officers would have known was unlawful.

*Id*. at 21-22 (internal footnote omitted).

For these same reasons, the court concludes that there is a genuine issue of material fact as to whether defendants Borthwell and Moses violated a constitutional right that was clearly established. Therefore, Borthwell and Moses are not entitled to qualified immunity.

## **ORDER**

It is hereby **ORDERED** that defendants Borthwell and Moses's March 15, 2011 motion for summary judgment is **DENIED.**

                                       s/John Corbett O'Meara
                                       United States District Judge

Date: November 10, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, November 10, 2011, using the ECF system.

s/William Barkholz<br>Case Manager